FILED
 2011 Apr-25  PM 12:31
 U.S. DISTRICT COURT
    N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| LOWANA F. MCKNIGHT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 10-G-0893-NE |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

The plaintiff, Lowana F. McKnight, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying her application for Social Security Benefits.  Plaintiff timely pursued and exhausted her administrative remedies available before the Commissioner.  Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied.  Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).  To that end this court "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." Bloodsworth, at 1239 (citations

omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth, at 1239.

## DISCUSSION

The plaintiff claims disability under Listing 12.05C, which requires that the claimant have "A valid verbal, performance, or full-scale I.Q. of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function." Davis v. Shalala, 985 F.2d 528, 531 (11th Cir. 1993)(quoting Listing 12.05C). When considering whether the plaintiff has a physical or mental impairment imposing significant work-related limitation of function in addition to a low verbal scale I.Q., the Commissioner must consider the plaintiff's impairments in combination. Davis 985 F.2d at 533. The issue of what constitutes "a physical or other mental impairment imposing additional and significant work-related limitation of function" was addressed in Edwards by Edwards v. Heckler:

> An impairment imposes significant limitations when its effect on a claimant's ability to perform "basic work activities" is more than slight or minimal. The question under Listing 12.05(C), however, is not whether the impairment is in and of itself disabling, see Wright v. Schweiker, 566 F.Supp 468, 476 (M.D.Tenn. 1983); thus, "significant" requires something less than severe within the meaning of § 404.1520(c) [of the Commissioner's Regulations].

755 F.2d 1513, 1515 (11th Cir. 1985)(considering whether the presence of chronic obstructive lung disease and exercise induced asthma provided a sufficient additional impairment to meet the second prong of Listing 12.05C.). The second part of the Listing,

2

therefore, imposes a less stringent requirement than that imposed by 20 C.F.R. § 404.1520(c). Section 404.1520 sets forth the five-step sequential process by which a claimant's disability is evaluated. Section 404.1520(c) defines "severe impairment" to require that the impairment or combination of impairments significantly limit the claimant's physical or mental ability to do basic work activities.

In addition to a valid I.Q. score meeting the requirements of Listing 12.05C, a plaintiff must also satisfy the diagnostic description in the introductory paragraph of Listing 12.05C. Listing 12.00A ("If your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets the listing.") The introductory paragraph to Listing 12.05C is as follows:

> Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22. The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

Therefore, a claimant must have manifested "significantly subaverage general intellectual functioning with deficits in adaptive functioning" prior to the age of 22 in order to meet Listing 12.05C. In this circuit, it is presumed that a persons I.Q. remains fairly constant throughout her life and a valid I.Q. test meeting the Listing criteria creates a rebuttable presumption that the condition manifested itself before age twenty-two. Hodges v. Barnhart, 276 F.3d 1265, 1268-69 (11th Cir. 2001). The Hodges, court recognized that

although this circuit had not formally recognized this presumption, it had been implicitly recognized in Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992), that when a claimant presents a valid I.Q. score meeting the Listing criteria, she is presumptively disabled under the Listing if the other requirements of the Listing have been met. Hodges, 276 F.3d at 1269.

   The court has carefully reviewed the record and finds that the decision of the ALJ, Dan Grady, must be reversed and the action remanded for further development of the record. The ALJ found that the plaintiff's "asthma/bronchitis, hypertension, headaches, and learning disorder" are considered 'severe,'" but that she did not suffer from a listed impairment. [R. 12, 14]. After the hearing, the ALJ sent the plaintiff on February 19, 2009, for a consultative psychological evaluation by Mary Arnold, Psy.D. As for the plaintiff's intellectual functioning, Dr. Arnold reported the following:

> Ms. McKnight is passively compliant with testing, given encouragement. The claimant understands instruction and she shifts tasks without difficulty. The effort she puts forth is marginal. She displays no concern about her performance. Ms. McKnight is right hand dominant; she wears glasses. <u>The results of testing are considered to be a valid estimate of her current level of functioning</u>, as she is found at the time of testing.
>
> Ms. McKnight's response pattern on the WAIS-III yields Borderline range FSIQ = 71. The difference between her VIQ = 71 & <u>PIQ = 69</u> is not significant. Relative to her own average performance, Ms. McKnight displays no strength/weakness among sub tests. Her Coding symbol reproductions reveal an inconsistent pattern of (11) errors, which makes no sense.

[R. 301](emphasis added) However, Dr. Arnold gave no DSM-IV Axis I diagnosis, but

under Axis II did <u>estimate</u> the plaintiff's <u>full scale</u> intelligence quotient to be borderline.

[R. 303]. She noted that no school records were available for her review. Such records would be significant and crucial to evaluating the plaintiff's limitations, especially considering the plaintiff's performance IQ was found to be 69.

In discussing Dr. Arnold's findings, the ALJ observed:

> In terms of the claimant's alleged learning disability, the claimant alleged special education but the school record only shows "C" grade average. She performed substantial gainful activity at the semiskilled levels (cashier, nursing assistant, and machine operator) until she was fired for missing work days. She was administered the WAIS-III and her response pattern on the WAIS-III yielded Borderline range FSIQ = 71, VIQ = 77 and PIQ = 69. The examiner noted that the claimant showed marginal effort and she displayed no concern about her performance.

[R. 16]. However, Dr. Arnold did not furnish a formal assessment of the plaintiff's intellectual functioning.[1] Additionally, the ALJ did not state what weight, if any, he was placing on Dr. Arnold's consultative report.

This court, and neither should the ALJ, succumb "to the [forbidden] temptation to play doctor and make [his] own independent medical findings." <u>Rohan v. Chater</u>, 98 F.3d 966, 970 (7th Cir. 1996). Because the consulting psychological examiner had no school records to review, and because of the Commissioner's duty to develop the

---

[1] While Dr. Arnold referred to a borderline full scale IQ score of 71, there was no diagnosis of borderline intellectual functioning. Moreover, Dr. Arnold's testing revealed a performance IQ score of 69, and the results of the testing were assumed to be valid. If the consulting psychological examiner had actually made an Axis II diagnosis, instead of an estimate, of either borderline intellectual functioning or mild mental retardation, then the ALJ could have made a reasonable determination of whether the plaintiff meets or equals Listing 12.05C.

5

record fully and fairly, "it is reversible error for an ALJ not to order a consultative examination when such an evaluation is necessary for him to make an informed decision." Holladay v. Bowen, 848 F.2d 1206, 1209 (11th Cir. 1988)(quoting Reeves v. Heckler, 734 F.2d 519, 522 n. 1 (11th Cir. 1984) (internal quotation marks omitted).  In the present case, the ALJ's failure to fully develop the record regarding the plaintiff's intellectual functioning and to order a further consultative examination by a specialist prevented him from making an informed decision.

On remand, the Commissioner shall properly develop the record concerning the plaintiff's condition, to include ordering a consultative examination by a neuropsychologist to determine the plaintiff's level of intellectual functioning, and whether her condition impairs her ability to work.  Such examination and evaluation shall be conducted within 90 days of this court's decision.

On remand, the Commissioner shall consider the combined impact of all her impairments.  When a claimant has multiple impairments they must be considered in combination.

> [A] claim for social security benefits based on disability may lie even though none of the impairments, considered individually, is disabling.  In such instances, it is the duty of the administrative law judge to make specific and well-articulated findings as to the effect of the combination of impairments and to decide whether the combined impairments cause the claimant to be disabled.

Bowen v. Heckler, 748 F.2d 629, 635 (11th Cir. 1984).

After fully and fairly developing the record regarding the plaintiff's

intellectual functioning and the effect of the combination of the plaintiff's impairments, the Commissioner also shall elicit testimony from a vocational expert about the impact of the plaintiff's combination of impairments on her ability to work.

An appropriate order will be entered contemporaneously herewith.

DONE and ORDERED 25 April 2011.

UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.